# EXHIBIT D-5

CAUSE NO. _____

| | | |
|---|---|---|
| **KEYBANK NATIONAL ASSOCIATION,** | § § § | **IN THE DISTRICT COURT OF** |
| *Plaintiff*, | § § | |
| v. | § § | **DALLAS COUNTY, TEXAS** |
| **LURIN REAL ESTATE HOLDINGS XXXVIII, LLC, LLC, JON. P. VENETOS, LURIN CAPITAL LLC, LURIN LLC,** | § § § § § § | |
| *Defendants*. | § § | \_\_\_\_ **JUDICIAL DISTRICT** |

## ORDER APPOINTING RECEIVER

This matter came before the Court upon Plaintiff KeyBank National Association's (in its capacity as lender under the Loan Documents (as defined herein), "**Lender**") *Verified Original Petition and Emergency Application for Appointment of Receiver* (as the same may have been amended, supplemented, or otherwise modified from time to time, the "**Application**"), for entry of an order appointing a receiver to take exclusive and complete possession, custody, and control of certain real and personal property of Lurin Real Estate Holdings XXXVIII, LLC (the "**Borrower**"), including, without limitation, that certain multi-family project commonly known as "46 Eleven," located at 4611 Samuell Blvd, Dallas, Texas 75228 (the "**Project**"). The Court, having read the pleadings, examined the evidence, including, without limitation, the Verification and the Loan Documents annexed to the Application, and heard the arguments of counsel, and the Application having been duly noticed to the Defendants to this action, and it appearing that a receiver should be appointed as requested by Lender, and for good cause shown, hereby finds and concludes as follows:

A. This Court has subject matter jurisdiction over this action pursuant to Sections

24.007 and 24.008 of the Texas Government Code. Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Lender currently seeks monetary damages of more than $1,000,000.00. Thus, Lender's claims exceed the minimum jurisdictional limits of this Court.

B. Venue of this action is proper pursuant to Sections 15.002(a)(1)-(3), 15.011, 15.005, and 15.006 of the Texas Civil Practice and Remedies Code and pursuant to the Loan Documents.

C. Pursuant to that certain Interim Loan Agreement dated as of October 11, 2024 (as the same may be or has been amended, restated, or otherwise modified from time to time, in accordance with its terms, the "**Loan Agreement**"), Lender made a secured term loan in the original principal amount of $7,150,000.00 (the "**Loan**") to the Borrower to refinance the Project. (*See* Application, Ex. 1). In connection with the Loan Agreement, the Borrower executed and delivered to Lender on October 11, 2024, that certain Promissory Note in the original principal amount of $7,150,000.00 (as the same may be or has been amended, restated, or otherwise modified from time to time, in accordance with its terms, the "**Note**"). (*See* Application, Ex. 2).

D. Repayment of the Loan is secured by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement, and Fixture Filing, dated as of October 11, 2024, in favor of Justin P. Wilbur as Trustee for the benefit of Lender (as the same may be or has been amended, restated, or otherwise modified from time to time, in accordance with its terms, the "**Deed of Trust**," and together with the Loan Agreement, the Note, and the other "Loan Documents" as that term is defined in the Loan Agreement, the "**Loan Documents**"). (*See* Application, Ex. 3).

E. Pursuant to the Deed of Trust, Lender was granted a first-priority lien and security interest in all real and personal property comprising the Project, including, without limitation, the

2

land, all existing and future buildings, structures, and improvements, all fixtures and equipment, all appurtenances and development rights, all accounts, deposit and reserve accounts, general intangibles, contracts, books and records, insurance and condemnation proceeds, and all substitutions, replacements, products, proceeds, profits, and accessions thereto (collectively, the "**Property**"). (*See* Application, Ex. 3 at § 1.1). The Deed of Trust further provides a present, absolute assignment of all leases, subleases, licenses, and other occupancy agreements affecting the Property, together with all rents, issues, profits, income, royalties, deposits, and other payments arising therefrom (collectively, the "**Rents**"), subject only to a revocable license in favor of the Borrower that automatically terminates upon the occurrence of an Event of Default, whereupon Lender is immediately entitled to collect the Rents. (*See* Application, Ex. 3 at § 2.1).

F. Lender's lien and security interest in the Property was duly perfected by: (a) Lender's recordation of the Deed of Trust on or around October 15, 2024, in the Official Records of Dallas County, Texas as Document No. 202400207756; and (b) Lender's recordation of that certain UCC-1 Financing Statement (File No. 2024-7143967), on or around October 15, 2024, with the Delaware Secretary of State. (*See* Application, Ex. 4).

G. Upon the occurrence of an Event of Default, the Deed of Trust entitles Lender, among other things, as a matter of right and without notice, bond, or regard to the solvency of the Borrower or the adequacy of the security, to the appointment of a receiver over all or any part of the Property and its proceeds, issues, and profits, with all powers and duties allowed by law and as set forth in the Deed of Trust, including possession, control, management, operation, leasing, collection of the Rents, and application of income, to protect, preserve, and operate the Property and to apply revenues as provided therein. (*See* Application, Ex. 3 at § 7.3.3). Additionally, the Loan Agreement provides that upon the occurrence of an Event of Default, Lender may have a

receiver appointed to, among other things, take possession of the Project and/or do anything Lender reasonably determines is necessary or appropriate to fulfill the obligations of the Borrower under the Loan Agreement and the other Loan Documents, including the right to avail itself of, and demand performance of, existing contracts and the right to enter into new contracts with the same or different contracting parties. (*See* Application, Ex. 1 at § 18.1.1).

H. Lender has requested a receivership over the assets, operations and activities of the Borrower. An additional purpose of the requested receivership is to maintain uninterrupted operation of the Borrower and the Project, pending further action, including non-judicial foreclosure or other disposition of the Property. Events of Default have occurred and are continuing under the Loan Documents. As set forth in the Application, Lender's loan to the Borrower has matured, the Borrower has failed to fund impound accounts for necessary tax and insurance payments for the Property, and cross-defaults exist under the Loan Documents. Additionally, the Borrower has failed to properly maintain the Property. These failures materially jeopardize the Property through potential tax liens, penalties, lapses in insurance coverage, and deterioration in operations. Without neutral control, there is a substantial risk that Rents will be dissipated rather than applied to protect the assets, tenants, and Lender's security.

I. Under the Loan Documents, the Borrower expressly agreed that Lender shall have the right to the appointment of a receiver upon the occurrence of an Event of Default. These contractual agreements support Lender's request for the appointment of a receiver.

J. Under Section 64.001(a)(2) and Subsection (b) of the Texas Civil Practice and Remedies Code (the "**TCPRC**"), a receiver may be appointed in an action by a creditor to subject any property or fund to the creditor's claim if the creditor (1) has a probable interest in or right to the property or fund, and (2) the property is in danger of being lost, removed, or materially injured.

4

Tex. Civ. Prac. & Rem. § 64.001(a)(2) & (b).

K.  Under Section 64.001(a)(4) and Subsection (c) of the TCPRC, a receiver may be appointed in an action by a mortgagee for the foreclosure of the mortgage and sale of the mortgaged property if either (1) it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or (2) the condition of the mortgage has not been performed and the property is probably insufficient to discharge the mortgage debt. Tex. Civ. Prac. & Rem. § 64.001(a)(4) & (c).

L.  Under Section 64.001(a)(7) of the TCPRC, a receiver may be appointed "in any other case in which a receiver may be appointed under the rules of equity." Tex. Civ. Prac. & Rem. § 64.001(a)(7).

M.  Lender satisfies the statutory predicates for a receivership under Section 64.001 of the TCPRC. First, Lender is a secured creditor with a present, perfected, first-priority lien and security interest in the Property and Rents pursuant to the Deed of Trust and UCC-1 filing, and therefore has a probable interest in and right to the Property and its proceeds. Second, the Property and its cash collateral are in imminent danger of being lost, removed, or materially injured. The Borrower has committed multiple continuing Events of Default, including uncured nonpayment defaults, failure to pay at maturity, failure to make required impound deposits for taxes and insurance, and cross-defaults across affiliated obligations. The Borrower's failure to fund tax and insurance impounds jeopardizes the Property by exposing it to tax liens, penalties, potential tax sales, lapses in insurance coverage, uninsured losses, and diminution in value. In addition, the Borrower's defaults terminate any revocable license to collect Rents under the Deed of Trust, yet, absent a receiver, there is a substantial risk that Rents and other operating revenues will be diverted, dissipated, or otherwise misapplied, further injuring the collateral.

N.      Independently, the appointment of a receiver is warranted under Section 64.001(a)(4) and (c) of the TCPRC. Lender is the beneficiary under the Deed of Trust and is seeking non-judicial foreclosure and the orderly sale or disposition of the Property. The conditions of the Deed of Trust have not been performed, including, without limitation, the failure to pay the Loan at the Maturity Date and failure to maintain required reserves and impounds. In light of the continuing defaults, the imposition of default interest and fees, the risk of tax and insurance exposure, and the lack of proper maintenance, it is probable that the Property may be insufficient to discharge the indebtedness unless its income and operations are promptly stabilized and preserved. The appointment of a receiver will protect and marshal the Rents, ensure payment of critical operating expenses, preserve occupancy and tenant relations, and maintain insurance and tax compliance, thereby preventing immediate and irreparable injury and avoiding waste.

O.      Appointment is also warranted under Section 64.001(a)(7) of the TCPRC pursuant to equitable principles. Equity intervenes to prevent waste, preserve going-concern value, and protect secured collateral where, as here, there are ongoing defaults, a breakdown of trust and performance under the Loan Documents, and a demonstrated risk that the Property and Rents will be impaired. The Property is a multi-family residential asset requiring continuous management, maintenance, leasing, rent collection, and compliance with health, safety, insurance, and tax obligations. A neutral fiduciary is necessary to ensure transparent accounting, prudent operation, and preservation of value, and to facilitate an orderly transition to non-judicial foreclosure, sale, or other disposition in a manner that protects tenants, maintains habitability, and prevents deterioration of the collateral. These equities strongly favor a receivership.

P.      Stuart Walker of Implex Advisors is disinterested and possesses the necessary qualifications to act as receiver in this case. Mr. Walker has experience with distressed multi-

family assets, and is not a party, attorney, or other person of interest in this action. (*See* Application, Ex. 7).

Accordingly, it is hereby **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

1. The Application is **GRANTED** in its entirety.

2. Any objections, responses, or reservations of rights filed with respect to the Application, if any, are **OVERRULED** on the merits.

3. Stuart Walker of Implex Advisors (the "**Receiver**") is appointed receiver for the Property.

4. The Receiver shall not be required to post a bond.

5. None of the actions taken by the Receiver or his agents shall be construed to have been taken by or on behalf of Lender.

6. The Receiver is authorized, in the exercise of his discretion, and subject to control of this Court, the laws regarding receivership, and the express terms and conditions of this Order, to do any and all acts necessary for the proper and lawful conduct of the receivership. Specifically, the following orders are entered:

    (a) **Appointment of Receiver.** The Receiver is appointed to act and serve as receiver with respect to the Borrower and the Property, with respect to income (of any kind) therefrom, whether now existing or hereafter collected, and with respect to any and all other property and property interests pledged or assigned to Lender under the Loan Documents on or in which Lender holds a lien or security interest under the Loan Documents or in which Lender otherwise has an interest under the Loan Documents including, without limitation, Rents;

    (b) **Receiver's Exclusive and Complete Control over the Borrower and the Property.** The Receiver shall have sole and exclusive authority to act for, and in the name of, the Borrower. This includes the sole and exclusive authority to execute contracts, deeds, instruments, and other documents, including any petition for bankruptcy or similar insolvency proceeding. Without leave and further order of this Court, no person or entity other than the Receiver is authorized to seek relief under the Bankruptcy Code for the Borrower. The Receiver is authorized to take and have complete and exclusive control and possession of the Borrower and the Property,

together with any and all bank accounts, credit card receipts, demand deposits, reimbursement rights, bank deposits, FEINs, security deposits and all other forms of accounts, accounts receivable, payment rights, cash and cash equivalents, along with any and all information necessary to operate the Borrower and the Property, including, without limitation, all security codes, combinations, passwords and other access codes, and all other collateral securing the indebtedness owed to Lender. The Receiver and/or the Receiver's property manager may utilize any licensing associated with operating the Property that is currently held by the Borrower or its property manager, subject to the requirements of any applicable license or governing law;

    **(c)**   **Items to be Delivered to the Receiver by the Borrower**. The Borrower and all persons acting under its direction or control are ordered to immediately deliver possession to the Receiver, without any right of offset or recoupment, of the Property and all other collateral securing the indebtedness owed to Lender, including, without limitation (to the extent in the possession, custody, or control of the Borrower or its agents: (1) cash collateral (whether consisting of cash on hand, cash in any and all bank accounts or other accounts, all rights to security deposits, including, without limitation, amounts that the Borrower may have deposited with utility companies, all rights to unearned insurance premiums or claim proceeds, or pre-payments of any kind, and all other cash and cash equivalents); (2) all keys; (3) all loans and communications and correspondence files relating thereto; (4) security deposits, rent, prepaid rent, other sums relating to the use, enjoyment, possession, improvement or occupancy of all or any part of the Property and any accounts of any of the foregoing; (5) a current list of the occupants of the Property, including the complete tenant ledgers with respect to each occupant; (6) complete tenant files and tenant histories; (7) any and all accounts receivable and accounts payable reports; (8) any and all contracts in effect with respect to the Property and all communications and correspondence pertinent thereto, including, without limitation, all service contracts and warranty information and contracts with vendors who provide or have provided services at the Property; (9) any and all files relating to contracts, bids or other materials relating to any contractor work at the Property; (10) any and all payroll records, employee files, applications and other materials relevant to those persons employed at the Property; (11) any and all insurance policies covering the Property, and all communications and correspondence pertinent thereto; (12) any and all bank statements and records relating to any accounts associated with the Property; (13) any and all records relating to pending or current litigation; and (14) any and all other records pertaining to the operation and management of the Property requested by the Receiver. To the extent that such material or information is held by third-parties, the Borrower shall take all reasonable and necessary measures to ensure access of Receiver to the same. Any and all other persons and entities in possession of or having custody or control over any documents, books, accounting records, or information relating to the operation of the Borrower or the Property, including, but not limited to, the Borrower and its agents, shall deliver them to the Receiver forthwith, and shall account for and pay over to the Receiver any assets of the Borrower in such person or entity's possession;

    **(d)**   **Borrower's Actions**. The Borrower, and any persons acting under its direction or control, are (1) directed to deliver the Property to the Receiver; (2) enjoined from in any way disturbing the possession of the Property or other property that is the subject of the order appointing the Receiver; (3) prohibited and restrained from disposing of, dissipating, mishandling or misappropriating any of the Property or other such property; (4) prohibited from taking any actions that would, directly or indirectly, have an adverse impact on the value of the Property; (5)

8

prohibited and restrained from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Property; and (6) prohibited and restrained from collecting any rents or other sums, all until further order of the Court;

(e) **Receiver's Right to Prevent Waste of, and to Preserve, the Property**. Effective immediately, the Receiver is ordered to take any and all actions the Receiver deems reasonable to prevent waste to the Property and to preserve, secure, manage, maintain and safeguard the Property and all other forms of property to which the Receiver is entitled to take possession and control under the order appointing the Receiver, in each case, in accordance with the Approved Budget prepared by the Receiver and in approved in writing by the Lender (each, an "**Approved Budget**");

(f) **Receiver Vested with the Information Related to the Property**. The Receiver is vested with the books and records of the Borrower with respect to operation of the Property and other property subject hereto, including any and all information related to: (1) rent rolls and leases affecting the Property, including, without limitation, leases for current and former tenants and a detailed accounting of all security deposits for current and former tenants; (2) amounts paid by lessees and other obligors of the Borrower; (3) liens, encumbrances and other interests against or affecting the Property; (4) property taxes owed and previously paid; (5) all types of insurance affecting the Property, including but not limited to, any and all information regarding any pending or settled insurance claims; (6) plans, specifications, surveys and drawings of the Property, including, without limitation, building and individual floor plans, elevator and/or escalator plans and mechanical system plans; (7) any and all maintenance logs and repair records for all systems in place at the Property; (8) access codes to any part of the Property; (9) all operating, income, financial and monthly statements related in any way to the Property, including but not limited to, any and all general ledgers, balance sheets, check registers, budgets and monthly billings; (10) all current account numbers for all utility companies; (11) any and all current marketing materials and information, including, without limitation, any prospect reports; and (12) all other aspects of the Property;

(g) **Receiver's Right to Manage, Maintain, and Operate the Borrower and the Property**. The Receiver is authorized to manage and operate the Borrower. The Receiver is further authorized to manage, operate, maintain, operate, lease and market the Property and to employ such managers, agents, employees, brokers, accountants and attorneys as may in his commercially reasonable judgment be advisable or necessary in the management, conduct, control or custody of the affairs of the Property. The Receiver is further authorized to make payments and disbursements in the ordinary course of business and to make such payments and disbursements as may be needed and proper for the preservation of the Property; and be authorized to pay net income from the Property to Lender, in reduction of the indebtedness owed to Lender by the Borrower. The Receiver will retain Herron Property Management as property manager. The Receiver will be paid a monthly receivership fee equal to the greater of $4,000 and 2.5% of gross revenue and $100 for each unit renewal or new lease, and the Receiver's property manager will be paid a monthly management fee not to exceed 3.75% of gross revenue. The Receiver may replace the property manager if the Receiver believes that doing so is in the best interest of the Property, subject to Lender's approval. Notwithstanding anything to the contrary set forth in this paragraph or any other paragraphs set forth in this Order, all such payments, disbursements, and incurrence

9

of liabilities shall be strictly in accordance with the Approved Budget;

**(h)** **Receiver Authorized to Sell the Property**. The Receiver shall be empowered to sell the Property in accordance with this Section. With the approval of the Court and Lender, the Receiver is authorized to sell all or part of the Property. The Receiver may, without prior Court authorization, engage broker(s) and related professionals, with the prior written consent of Lender, to market the Property for sale. The final purchase and sale agreement must be approved by Lender and the Court. Nothing herein shall preclude Lender from electing to post the Property for nonjudicial foreclosure sale and conducting that sale, without prior permission from the Court, pursuant to the Loan Documents;

**(i)** **Receiver's Right to Collect Amounts Due**. The Receiver is authorized to receive and collect any and all sums due or owing to the Borrower in any manner related to the Property, whether the same are now due or shall hereafter become due and owing, to deposit such sums into an account established and maintained by the Receiver with Lender, and to expend such sums on the operation and management of the Property in the ordinary course of its business in accordance with the Approved Budget;

**(j)** **Legal Actions Related to the Property**. The Receiver is authorized to institute, prosecute, defend, compromise and/or intervene in or become a party to such actions or proceedings in state or federal courts necessary for the protection, maintenance and preservation of the assets of the Borrower and to carry out the terms of the Court's order appointing the Receiver, including, without limitation, the collection of Rents and other amounts now or hereafter becoming due, the removal of tenants or other persons from the Property and/or the defense against any action brought against the Receiver acting in such capacity;

**(k)** **Insurance**. The Receiver and/or Receiver's management company is authorized, in accordance with the Approved Budget, to maintain appropriate property insurance for the Property, including public general liability insurance, worker's compensation insurance, fire and extended coverage insurance, employer's liability insurance, employment practices insurance, liquor liability insurance, non-owned auto umbrella insurance, burglary and theft insurance, and other types of insurance normally obtained in connection with the operation and management of the Property; and is authorized to continue any current policies in place and to purchase further insurance as the Receiver deems appropriate;

**(l)** **Payment of Property Taxes; Preparation and Filing of Tax Returns for the Property**. The Receiver is authorized, in accordance with the Approved Budget, to (i) pay all current and past due real estate taxes, personal property taxes and any other taxes and assessments against the Property; and (ii) prepare and file tax returns with respect to the Property, and other property subject hereto, as may be required by law, provided, however, the Receiver is not responsible for the preparation of tax returns for the Borrower or any of its affiliates;

**(m)** **Property Protection Advances from Lender**. The Receiver and Lender are authorized to enter into transactions by which Lender may fund to the Receiver, in Lender's sole and absolute discretion, property protection advances to enable the Receiver to perform his duties hereunder, which may be advanced pursuant to the Loan Documents or receivership

certificates, and will be secured by the liens, security interests, terms and provisions contained within the Loan Documents or receivership certificates, as applicable;

(n) **Leases; Payment of Utilities; Maintenance of the Property; Compliance with Laws**. The Receiver is authorized, in each case, in accordance with the Approved Budget, to: (1) negotiate and enter into new leases, occupancy agreements and contracts in the ordinary course of the business of the Property; (2) modify existing leases, occupancy agreements and contracts in the ordinary course of the business of the Property; (3) pay all utilities, expenses and other obligations secured by the Property or which may give rise to liens on the Property, and all other outstanding obligations to suppliers and service providers in the ordinary course of business, including obligations incurred prior to the commencement of the receivership, so long as the Receiver has determined that it is prudent to do so in order to maintain business relationships that are beneficial to the conduct of the receivership; (4) make repairs necessary to the maintenance of the Property in order to preserve the Property in the ordinary course of business; and (5) comply with all requirements and regulations applicable to the Property;

(o) **Application of Income from the Property**. The Receiver is permitted to apply income from the Property, subject to the lien and security interest rights of Lender, in each case, in accordance with the Approved Budget, as follows: (1) the Receiver's approved fees and expenses; (2) the current operating expenses of the receivership in the ordinary course of business; (3) the obligations owed to Lender under the Loan Documents; and (4) such other obligations incurred;

(p) **Receiver's Cash on Hand**. The Receiver is permitted to maintain sufficient cash on hand to enable the Receiver to meet those expenses, the payment of which is authorized herein, in an amount to be agreed to between the Receiver and Lender;

(q) **Payment of Property Expenses**. The Receiver is permitted to pay all expenses incurred with regard to the Property in the normal and ordinary course of business of the Property by the Receiver on or after the date the Receiver is appointed, in each case, in accordance with the Approved Budget. Neither the Receiver nor Lender shall be liable for any expenses incurred with regard to the Property prior to the Receiver taking possession of the Property, nor shall the Receiver or Lender be required to use any Rents or additional funds advanced by Lender or other revenues collected after the Receiver takes possession of the Property in payment of such expenses. Notwithstanding the foregoing, the Receiver may, in the Receiver's sole and absolute discretion, pay those expenses that were incurred in the normal and ordinary course of business of the Property and that were incurred prior to the Receiver taking possession of the Property, if, and only if, the payment of any such pre-existing expenses is necessary and critical to the ongoing operation of the Property (e.g., utilities) and such amounts are set forth in the Approved Budget. It shall be incumbent upon the Receiver, in the Receiver's sole and absolute discretion, to make a determination as to which expenses, if any, incurred prior to the Receiver's taking possession of the Property, were incurred in the normal and ordinary course of business and the payment of which is necessary and critical to the ongoing operation of the Property. No pre-existing expenses shall be paid by the Receiver without written approval by Lender or further order of this Court. No costs or expenses of administration of the receivership, including any fees of the Receiver or estate professionals, shall be charged against or recoverable from Lender or Lender's collateral under

11

any theory, including surcharge, unjust enrichment, or quantum meruit. No marshaling of assets shall be required with respect to Lender's collateral. No priming liens or claims shall be granted or approved without Lender's prior written consent and further order of this Court;

(r)     **Receiver's Liability**. Except in the event of gross negligence, willful misconduct, or actions in violation of orders of the Court, the Receiver and its agents shall have no personal liability for any obligations incurred in the course of the receivership, any and all such liabilities being limited to the assets (including the cash and cash equivalents) received and generated by the Receiver in the course of the receivership, subject, in each case, to the existing liens of Lender;

(s)     **Lender Not a Mortgagee-In-Possession**. Lender shall not be deemed in possession, control, or management of the Property or the Borrower, shall not be a mortgagee-in-possession, and shall have no liability for any act or omission of the Receiver or for any receivership obligation or expense; and

(t)     **General Authority**. The authority granted to the Receiver is self-executing. The Receiver is permitted to take any and all actions necessary to preserve the income to and value of the Property, to seek further Orders from this Court, if necessary, to perform the duties associated with this receivership, and to perform any other acts in regard to the Property as authorized by this Court.

7.  At the request of the Receiver, any depositary institution holding funds related to the Property shall close accounts holding the Property's funds and transfer those funds pursuant to the Receiver's direction.

8.  To ensure the orderly operation of the receivership and maximize the value of the assets, the Receiver shall do the following:

>   (a)   The Receiver, his employees and retained professionals shall prepare monthly statements of services rendered and time expended during the course of the receivership. Those periodic statements shall be filed with the Court and made available to the parties in this litigation.
>
>   (b)   Unless a party files a written motion objecting to the payment of a periodic invoice within ten (10) calendar days of receipt of the invoice, the Receiver is authorized to pay the invoice in accordance with the Approved Budget. In the event that a written objection to the payment of the claim is timely made with the Receiver and the Court, the objection should be set for hearing by the objecting party as soon as possible.
>
>   (c)   Until a court order is entered concerning any objection filed, Receiver shall be authorized to pay only eighty percent (80%) of the fees stated in the

invoice at issue and shall hold back payment of twenty percent (20%) of the charge for fees stated in said invoice.

9. The Receiver shall, within sixty (60) days of qualification and appointment, file in this action an inventory of all property of which the Receiver has taken possession, including all funds in the Receiver's possession, all rents and revenues received by the Receiver, and all expenses paid by the Borrower or its agents related to the Property in the three (3) months before the Receiver's appointment. If the Receiver subsequently comes into possession of additional property, the Receiver will file a supplemental inventory as soon as practical. In addition, the Receiver shall file monthly reports with the Court (copying Lender and the Borrower) advising the Court of the status of the Property.

10. In order to promote judicial efficiency, all persons who receive actual or constructive notice of this Order are enjoined in any way from disturbing the receivership assets or from prosecuting any new proceedings (including collection or enforcement proceedings) that involve the Receiver, the receivership assets or the Property (including any proceeding initiated pursuant to the United States Bankruptcy Code) unless such person or persons first obtains the permission of this Court. Neither the Borrower nor anyone acting under the Borrower's control shall file any action or proceeding involving the Property in any Court other than this Court.

11. Notwithstanding the foregoing, Lender shall be permitted, without prior permission, prior approval, or further order of this Court, to take such actions as are necessary to prepare to conduct and to conduct a non-judicial foreclosure sale of any of the Property pursuant to the terms of the Loan Documents, including, without limitation, posting notices of sale, sending notices and demand letters, if necessary, filing notices where and when required, and conducting a non-judicial foreclosure sale of the Property.

12. The Receiver shall maintain accurate accounting and other records of its activities

in connection herewith and shall file reports detailing the results from operations of the Property as subsequently ordered by the Court.

13. In addition to any financial, operating, and other reports and information required to be delivered pursuant to the Loan Documents, the Receiver shall deliver to Lender and file in the record of the above-captioned case, no later than the twentieth (20th) day of each calendar month, beginning the month following appointment of the Receiver, each of the following with respect to the immediately preceding calendar month, certified by the Receiver as true, correct, and complete:

    (a) Balance sheets, statements of income and expenses, statements of cash flows (each on a budget versus actual comparison basis) for the Property;

    (b) Detailed rent rolls for the Property showing the occupancy of the Property, name of each tenant and, for each tenant, the space occupied, the lease commencement and expiration dates, the rent payable, the rent paid to date and the security deposit being held for such tenant, and a leasing activity report for the Property in detail reasonably satisfactory to Lender;

    (c) Aged payables reports and aged receivables reports for the Property;

    (d) Capital expenditure reports for the Property; and

    (e) All bank statements with monthly reconciliations.

14. No later than forty-five (45) days after the date on which the Property is transferred out of the receivership estate (via non-judicial foreclosure sale or otherwise), the Receiver shall deliver to Lender and file in the record of the above-captioned case, (i) a final report and accounting containing the information set forth in paragraph 13 of this Order, and (ii) a motion to formally discharge the Receiver from his duties pursuant to this Order. Upon such filing, any bonds, shall be canceled, and the Receiver shall be discharged, upon the Court's approval of the Receiver's final accounting. The Receiver shall retain sufficient funds to pay final bills and expenses related to the Property in accordance with the Approved Budget.

15. The Borrower and its acting property manager(s) shall fully cooperate with the Receiver in adding the Receiver and its agents, any management company retained by the Receiver, and Lender, if necessary, as named insureds, and Lender as the loss payee, on all insurance relating to the operation and management of the Property including, without limitation, fire, extended coverage, auto and van coverage, property damage, liability, fidelity, errors and omissions, and workers compensation, and modifying the policies if deemed appropriate by the Receiver. The Borrower and all persons acting under its direction (including any property manager) are prohibited from canceling, reducing, or modifying any and all insurance coverage in existence with respect to the Property.

16. All creditors, claimants, bodies politic, parties in interest, and their respective attorneys, agents, employees, and all other persons, firms, and corporations, hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against the Property, the books, records, revenues, profits, and related assets associated with the Property, or against the Receiver or Borrower in any court, unless otherwise ordered by this Court. These persons and entities are further stayed from executing or issuing or causing the execution or issuance out of any court of any writ, process, summons, attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon any of the Property or the books, records, revenues, profits and related assets associated with the Property, or upon the Receiver, and from doing any act or thing whatsoever to interfere with the Receiver in the discharge of its duties in this proceeding or within the exclusive jurisdiction of this Court over the Property and the books, records, revenues, profits and related assets associated with the Property, unless otherwise ordered by this Court.

17. All third parties in possession of assets subject to this Order are hereby ordered to turn over such assets to the Receiver within five (5) business days of receipt of a copy of this Order.

18. No person or entity shall file suit against the Receiver and its agents, or take other action against the Receiver, without an order of the Court permitting the suit or action; provided, however, that no prior court order is required to file a motion in this action to enforce the provisions of this Order or any other order of the Court in this action. The Receiver may file a motion to transfer any action or proceeding involving the Property to this Court.

19. The Receiver and his employees, agents, and attorneys, including the Receiver's property manager, shall have no personal liability in connection with any liabilities, obligations, liens, or amounts owed to any of the creditors of the Borrower because of his duties as Receiver. Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with the laws of the State of Texas.

20. The Receiver and his employees, agents, and attorney, including the Receiver's property manager, shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts, or the failure to comply with the Court's orders.

21. Lender's rights, remedies, and equities against any guarantor or other obligor with respect to the indebtedness and other obligations under or related to the Loan Documents are expressly preserved and unaffected by this Order.

22. Any utility company providing service to the Property shall not, without prior Order of this Court, discontinue or terminate such service based on the status of payment on an account

for such Property maintained by the Borrower or its agents. The Receiver also shall not be required to make any deposit or advance payment as a condition of receiving utility services, provided that the Receiver shall not request or accept utility services if the Receiver knows or believes that the assets of the receivership are insufficient to pay for utility services.

**IT IS SO ORDERED**.

SIGNED THIS DAY OF _____, 2025

_____
JUDGE PRESIDING

SUBMITTED BY:

**RANDALL | GREER PLLC**

/s/ James B. Greer
_____
James B. Greer
Texas Bar No. 24014739
5910 N. Central Expressway, Ste. 925
Dallas, Texas 75206
Telephone: (214) 628-9966
Facsimile: (214) 628-9967
jgreer@rglaw.com

*and*

**THOMPSON HINE LLP**

/s/ Curtis L. Tuggle
_____
Curtis L. Tuggle (Ohio Bar No. 0078263)*
Jack M. D'Andrea (Ohio Bar No. 0097084)*
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
(216) 566-5500 (phone)
(216) 566-5800 (fax)
Curtis.Tuggle@ThompsonHine.com
Jack.D'Andrea@ThompsonHine.com

*Counsel for KeyBank National Association*

*Motion for *pro hac vice* admission forthcoming

17